UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVEN M. RAFSKY,<br>    Plaintiff,<br><br>v.<br><br>SMALLBIZPROS, INC.,<br>SUE BOSEVICH, EXECUTRIX OF<br>THE ESTATE OF DAN SAUTNER,<br>and BRIAN AUSTIN,<br>    Defendants. | CIVIL ACTION<br>NO. 20-11148-TSH |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**
March 19, 2024

**HILLMAN, S.D.J.**

### Introduction

Defendants Smallbizpros, Inc. ("Smallbizpros"), Executrix Sue Bosevich on behalf of decedent Dan Sautner ("Sautner"), and Brian Austin ("Austin") (collectively the "Defendants"), move to dismiss all counts in Plaintiff Steven Rafsky's ("Rafsky") Amended Complaint on *res judicata* grounds. (Docket No. 32). Rafsky opposes this Motion. After careful review of the record, the briefs, and hearing the parties at oral argument, the Court ***grants*** the Defendants' Motion to Dismiss in its entirety.

**Factual Background**[1]

Plaintiff Rafsky is the former Chief Executive Officer and former Chair of the Board of Defendant Smallbizpros. Smallbizpros is a corporation organized under the laws of Georgia with a principal place of business in Athens, Georgia, which was formed on or about January 31, 2003. Smallbizpros is engaged in the business of accounting, tax preparation, consulting, and payroll services throughout North America, with a focus on small businesses. Rafsky served as Smallbizpros' Chief Executive Officer and as a member of its Board of Directors until September 20, 2019, when his employment and status as Board member were terminated.

The Smallbizpros Board of Directors, which included Defendants' decedent Sautner and Austin as members, voted to move forward to sell the company shortly before Rafsky was terminated. Defendants' decedent Sautner and Austin then allegedly executed a "hostile takeover" of Smallbizpros to stop the sale of the company and remove any Board members who did not agree. After taking a controlling share in the company, Defendants' decedent Sautner and Austin allegedly caused Smallbizpros to remove Rafsky from the Board and terminate Rafsky as CEO. Rafsky alleges that he is owed wages related to a deferred compensation agreement, back wages and unused vacation time while he was still acting as an employee of Smallbizpros, as well as severance related to his termination as CEO and Board member at Smallbizpros.

**Procedural Background**

This case was previously litigated in the United States District Court for the Middle District of Georgia (the "Georgia Action") as a shareholder dispute. Rafsky and other plaintiffs filed their initial Georgia complaint in October 2019, and their amended Georgia complaint on

---

[1] At the Motion to Dismiss stage, the Court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).

March 24, 2020, in which they alleged, *inter alia*, that they were wrongfully removed from the management and active involvement of Smallbizpros via a "hostile takeover" undertaken by the defendants in the Georgia Action. The plaintiffs in the Georgia Action filed suit against all the named Defendants here, among others. Once discovery concluded, the parties to the Georgia Action eventually submitted dueling Summary Judgment motions. District Judge Land then issued a lengthy opinion on May 11, 2021, in which he ruled against the Georgia plaintiffs on their request for a declaratory judgment and granted the Georgia defendants' summary judgment motion, ruling against all the Georgia plaintiffs' other claims. Specifically, Judge Land found that the Georgia defendants acted properly and with authority when they removed Rafsky and others from the Smallbizpros Board and then subsequently terminated Rafsky's employment as CEO. Rafsky and other plaintiffs then timely took an appeal from the Order of the Middle District of Georgia to the Court of Appeals for the Eleventh Circuit. The Eleventh Circuit affirmed the Middle District of Georgia's decision on July 20, 2022, resulting in a final judgment on the merits.

      Seven months later, the present action (the "Massachusetts Action") arose from a complaint Rafsky filed on April 24, 2020, in the Massachusetts Superior Court, Business Litigation Section. Rafsky's complaint alleges similar claims to those alleged in the Georgia Action, with an added Massachusetts Wage Act claim (Count I), two contract claims (Counts II-III), and a severance claim (Count VIII) related to his termination as CEO of Smallbizpros. On August 17, 2020, the Defendants removed the action to this Court pursuant to its diversity jurisdiction. 28 U.S.C. § 1332(a). The Defendants then moved to dismiss the case on August 24, 2020, under prior pending acting doctrine, or in the alternative transfer the case to the Middle District of Georgia or issue a stay pending resolution of the Georgia Action and any appeals

arising therefrom. Accordingly, Judge Woodlock of this Court issued a stay on November 10, 2020. Defendants now move to dismiss the complaint for a second time, contending that this Court should dismiss all counts on *res judicata* grounds.

### **Standard of Review**

The doctrine of *res judicata* establishes that claims arising from the same transaction or a common nucleus of operative facts that have been fully adjudicated on the merits are barred from further litigation. *Airframe,* 601 F.3d 9, 12 (1st Cir. 2010). The interests undergirding the application of *res judicata* include "protecting litigants against gamesmanship and the added litigation costs of claim-splitting, and preventing scarce judicial resources from being squandered in unnecessary litigation." *Id.* at 14. "Those interests [in applying *res judicata*] are especially implicated… where the plaintiff had every opportunity to fully litigate its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so." *Id.* "Plaintiffs cannot obtain a second chance at a different outcome by bringing related claims against closely related defendants at a later date." *Id.*

"… [T]he rule in this Circuit is that the 'federal law of res judicata governs the effect of a prior federal judgment.'" *Lube 495, Inc. v. Jiffy Lube Int'l, Inc.*, 813 F. Supp. 100, 111 (D.Mass. 1993) ("*Lube*") (quoting *Johnson v. SCA Disposal Services of New England*, 931 F.2d 970, 974 (1st Cir. 1991)). "All claims which are part of the same cause of action are extinguished, whether or not asserted in the original action." *Kale v. Combined Ins. Co. of America*, 924 F.2d 1161, 1164 (1st Cir. 1991), *cert. denied*, 502 U.S. 816, 112 S.Ct. 69 (1991); *accord Airframe*, 601 F.3d at 14 (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)) ("Federal claim preclusion law bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made").

The doctrine of *res judicata* is applicable when the following factors are met: "(1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Airframe* 601 F.3d at 14. Causes of action are sufficiently identical when they "derive from a common nucleus of operative facts." *Breneman v. U.S. ex rel. F.A.A.,* 381 F.3d 33, 38 (1st Cir. 2004) (*quoting Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 755 (1st Cir. 1994)). Courts determine whether the first claim and the subsequent claim are derived from a common nucleus of operative facts by looking to factors such as "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and whether treating them as a unit "conforms to the parties' expectations." *In re Iannochino,* 242 F.3d 36, 46 (1st Cir. 2001) ("*Iannochino*") (*quoting Restatement (Second) of Judgments* § 24 (1982) (internal quotation marks omitted).

## Discussion

As a preliminary matter, Rafsky concedes that the Georgia Action bars Count IV ("Misrepresentation, Fraud & Deceit"), Count IX ("Minority Freeze-Out / Breach of Fiduciary Duty"), and Count X ("Conspiracy"). The Court accordingly dismisses each of these Counts with prejudice. Now the Court will consider the *res judicata* factors as applied to the remainder of Rafsky's claims. *Airframe* 601 F.3d at 14.

### *Res Judicata Factors—Relatedness of the Causes of Action*

Rafsky asserts that the remaining Counts, I-III, V-VIII, and XI-XII, are not barred by *res judicata*. Both parties agree that the first and third *res judicata* factors are met by the Massachusetts Action. The parties disagree, however, on whether the second *res judicata* factor

is met by the Massachusetts Action, with Rafsky asserting that the Massachusetts Action is not sufficiently identical or related to the cause of action in Georgia.

The second *res judicata* factor is met when there is sufficient identicality between causes of action in both suits. *See Airframe* 601 F.3d at 14. This identicality is found when both sets of claims – those asserted in the earlier action and those asserted in the subsequent action – derive from a common nucleus of operative facts. *Kale*, 924 F.2d at 1166; *Gonzalez*, 27 F.3d at 755. In deciding whether there exists a common nucleus, factors the Court may consider are "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and whether treating them as a unit "conforms to the parties' expectations." *Iannochino,* 242 F.3d at 46. The Court considers each of these factors in turn.

*Relatedness of Facts*

The Georgia Action and the Massachusetts Action rely on facts "related in time, space, origin or motivation" because both the Georgia Action and several of the Counts in the Massachusetts Action rely on the following facts: Defendants decedent Sautner and Austin allegedly executed a "hostile takeover" of Smallbizpros to stop the sale of the company and, after taking a controlling share in the company, Defendants decedent Sautner and Austin allegedly caused Smallbizpros to remove Rafsky from the Board and terminate Rafsky as CEO. See *Airframe* 601 F.3d at 15. The Georgia Action has already fully resolved the aforementioned facts in the Defendants' favor. Docket No. 33, Exhibit D at p. 39 ("Defendants held a controlling stake in Smallbizpros on September 20, 2019, and October 22, 2019, so they had the votes to take the actions they took to remove the incumbent board members and appoint new board members…" and "Plaintiff Steven Rafsky shall be restrained from purporting to act as the Company's Chief Executive Officer."). The motivation behind both suits, while somewhat different in that Rafsky

now asserts "personal claims" related to his termination, is the same in that they both seek redress for the alleged conspiracy to "conduct a hostile takeover of [Smallbizpros]" and to "wrongfully terminate Rafsky," making this the underlying basis of both claims. Docket No. 33, Exhibit B at ¶1; *see Swaida v. Gentiva Health Servs.*, 238 F. Supp. 2d 325, 328–29 (D.Mass. 2002) (finding facts underlying both suits "related in time, space, origin and motivation" where plaintiff's termination was at issue even though both pursued different legal theories).

*Whether the Facts Form a Convenient Trial Unit*

Moving to the second factor, "where the witnesses or proof needed in the second action overlap substantially with those used in the first action, the second action should ordinarily be precluded." *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31 (1st Cir. 1996). Here, these claims would rely on the same witnesses and a substantial amount of the same evidence, indicating further that they should be barred for failure to raise them in the first suit. *Iannochino*, 242 F.3d at 47; *Mass. Sch. of L. at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d 26, 37 (1st Cir. 1998); *id.* A trial in the Massachusetts Action would require calling witnesses, taking depositions, and presenting much the same evidence as a trial in the Georgia Action would have, but for Rafsky's (and others') loss on summary judgment. For example, Rafsky would likely present evidence of past agreements such as the 2000 Holdco Agreement and the April 2003 Agreement in juxtaposition with evidence of the takeover of Smallbizpros and his subsequent termination to prove his claims against Defendants decedent Sautner and Austin. Likewise, Rafsky would likely seek to present evidence demonstrating that his termination was unlawful and that he is owed damages, just as he and the other plaintiffs complained of in the Georgia Action. It appears then that the facts alleged in both suits would form a convenient trial unit.

Rafsky opposes the finding of a convenient trial unit contending that the Middle District of Georgia would have "bifurcated the disputes into separate trial units with the first trial resolving the shareholder dispute and the second trial resolving the employment dispute." Docket No. 36 at 17. While the shareholder claims and employment claims may have been bifurcated in Georgia, Rafsky fails to cite to, and the Court could not find, any case standing for the proposition that a likelihood of bifurcation means that a plaintiff cannot or should not raise a claim that arises out of a transaction or series of transactions. A decision not to bring personal claims in part because of the potential for bifurcation represents a strategic choice, and "claim preclusion doctrine requires [a plaintiff] to live with those choices." *Airframe*, 601 F.3d at 11, 14. Rafsky had "every opportunity to fully litigate [his] various claims against the full range of defendants in [the Georgia Action] and made the strategic choice not to do so. *Id.* at 14.

*Whether Treating the Facts as a Unit Conforms to the Parties' Expectations*

Finally, while Rafsky obviously did not expect to raise these claims in Georgia because he did not in fact raise them, Rafsky relied on several of the same facts in the Georgia Action as he does here in the Massachusetts Action. *Compare* Docket No. 33, Exhibit 1 at ¶¶ 36-49 with Docket No. 33, Exhibit B at ¶¶ 71-74. "In assessing the parties' litigation expectations, we look to the parties' knowledge at the time of the first suit on the underlying facts." *Iannochino,* 242 F.3d at 48 (*citing Porn,* 93 F.3d at 37). Thus, when facts are duplicative, and do not arise after a prior suit, the parties should expect the facts to be treated as a unit. *See Iannochino,* 242 F.3d at 48 ("two claims arose in the same time frame out of similar facts, one would reasonably expect them to be brought together") (*quoting Porn,* 93 F.3d at 37). The relevant facts alleged here in the Massachusetts Action took place prior to the filing of the Georgia Action, despite supporting some of the newly plead, personal claims of Rafsky. *See Silva v. City of New Bedford*, 660 F.3d

76, 78 (1st Cir. 2011) ("Additional allegations in [his] complaint ... do not affect the identicality of the underlying transaction for both complaints"); *contra Gladu v. Correct Care Solutions*, No. 17-00504, 2019 WL 5423019, at *10 (D.Me. Oct. 23) (finding claims did not arise from the same transaction when facts alleged in subsequent complaint occurred *after* the prior action).

Rafsky cites to *Minarik Elec. Co. v. Electro Sales Co.*, 223 F.Supp 2d 334, 339 (D.Mass. 2002) in support of his proposition that these suits are not predicated on the same facts. *Minarik*, however, is more useful in analyzing the expectations factor, as the Court there found *res judicata* not applicable because the defendant's conduct occurred after the prior lawsuit. *See Minarik*, 223 F.Supp 2d at 339. Here Defendants' alleged conduct took place *before* the filing of both the Georgia Action and the Massachusetts Action. *Contra id.* ("the conduct at issue in the first case occurred in a completely different time frame than the conduct addressed by the current complaint"). Accordingly, the Court finds that these three factors support a finding of identicality between the Georgia Action and the Massachusetts Action.

*Calderon Rosado Exception*

Rafsky asserts that the *Calderon Rosado* claim-splitting exception to *res judicata* applies here because the Defendants did not object to plaintiffs' splitting of claims between Georgia and Massachusetts. *Calderon Rosado v. Gen. Elec. Circuit Breakers, Inc.*, 805 F.2d 1085, 1087 (1st Cir. 1986). *Calderon Rosado* stands for the proposition that if a defendant fails to object to claim splitting prior to an adjudication on the merits of the first claim, the res judicata defense may be deemed waived in the second claim. *See Barreto-Rosa v. Varona-Mendez*, 470 F.3d 42, 46 (1st Cir. 2006), *citing Calderon Rosado*, 805 F.2d at 1087. The policy behind this exception is that it would be unfair to allow a defendant to use res judicata to defend a second claim if, influenced by its consent to the claim splitting, the plaintiff voluntarily dismissed its first claim. *Id.*

In *Calderon Rosado*, the plaintiff "consented to the claim splitting when [it] made [both] *affirmative statements* acknowledging that the claims in federal court would proceed *and* also *failed to object* to the claim splitting at any point in the litigation." 805 F.2d at 1087 (emphasis added). That Rafsky fails to cite to *Barreto-Rosa*'s distinguishing of *Calderon Rosado* does not make it any less binding on this Court. *See Barreto-Rosa*, 470 F.3d at 46 (stating that "consent [in *Calderon Rosado*]… was based on the employer's affirmative statements acknowledging the claim splitting *as well as* his failure to object.") (emphasis added). In *Barreto-Rosa*, "the [d]efendants raised an objection to the claim splitting in their first responsive pleading to the complaint in federal court—their motion for summary judgment," and did not make affirmative statements acquiescing to any claim splitting. 470 F.3d at 46-47. The First Circuit in *Barreto-Rosa* held the *Calderon Rosado* exception inapplicable to the plaintiff for failing to meet both requirements. *Id.*

Here, the *Calderon Rosado* exception is inapplicable because, like in *Barreto-Rosa*, "the [d]efendants raised an objection to the claim splitting in their first… [substantive] pleading to the complaint in federal court…" here their First Motion to Dismiss (Docket No. 9), and the Court could not find, and Rafsky did not cite to, any evidence in the record indicating that the Defendants have made any affirmative statements acquiescing to Rafsky's claim splitting. *See Barreto-Rosa*, 470 F.3d at 46; *Calderon Rosado*, 805 F.2d at 1087. Furthermore, contrary to Rafsky's repeated assertions, specifically objecting to a plaintiff's claim splitting is not required by *Calderon Rosado*. 805 F.2d at 1087. Thus, the *Calderon Rosado* exception does not apply. *Id.*

### *Declaratory Judgment Exception*

Rafsky also asserts, and Defendants neglect to contest in their briefs, that because Rafsky sought declaratory judgment in the Georgia Action, a declaratory judgment exception to *res*

*judicata* applies. *See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 54 (1st Cir. 2008) (holding that under Massachusetts state law declaratory relief does not bar a plaintiff from seeking further coercive claims). Rafsky also asserts that when a plaintiff seeks declaratory relief, *res judicata* does not act as a bar to further coercive relief. *Id.* (relying on *Section 33 of the Restatement (Second) of Judgments*)). Here because federal law governs, the holding of *Andrew Robinson Int'l, Inc.* does not apply. *See Andrew*, 547 F.3d at 54; *Swaida*, 238 F. Supp. 2d at 327.

While Rafsky does not cite the following case, it appears that only one case in the First Circuit stands for his second proposition that declaratory judgments do not function as a claim preclusive device under federal law. *See Lube*, 813 F. Supp. at 111 (holding that a declaratory judgment on some duty and breach claims was not a full adjudication on the merits sufficient to bar claims on *res judicata* grounds). This exception applied because "the prior litigation sought *solely* declaratory relief," but here the Georgia Action sought declaratory relief *and* other claims, including breach of fiduciary duty (Count II), fraud and conspiracy to commit fraud (Counts III-V), unjust enrichment (Count X), and specific performance (Counts XI and XII). *Id.* (emphasis added). Docket No. 33, Exhibit D.

Not only did Rafsky not request declaratory judgment alone, but the Georgia Action constituted a full judgment on the merits sufficient to require claim preclusion. *Contra Lube*, 813 F. Supp. at 111 ("the rules of claim preclusion are difficult, if not impossible, to apply in the usual form when a declaratory judgment proceeding ends in a judgment that states *no more than* 'dismissed with prejudice.'") (*quoting Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc.,* 575 F.2d 530, 536 (5th Cir. 1978) (emphasis added)). Judge Land in the Federal District Court for the Middle District of Georgia issued a 40-page opinion in which he ruled against the Georgia plaintiffs on their declaratory judgment and granted the Georgia defendants'

summary judgment motion as to all the Georgia plaintiffs' other claims. Docket No. 33, Exhibit D at 39. Moreover, Judge Land granted a declaratory judgment and a permanent injunction to the Georgia Defendants. *Id.* The disposition on summary judgment of the Georgia Action constituted a full adjudication on the merits of Rafsky's claims, sufficient to find the second factor of *res judicata* test met and therefore requiring the dismissal of the instant Action. *See Airframe*, 601 F.3d at 14.

Accordingly, the Court finds that Counts V-VII and XI-XII all stem from the "hostile takeover" by Defendants' decedent Sautner and Austin and the subsequent termination of Rafsky by the Board, which has already been resolved in Defendants' favor in the Georgia Action and therefore the claims all arise from a common nucleus of operative fact. The Court accordingly dismisses each of these Counts with prejudice. With respect to Rafsky's "personal claims," the Court analyzes those in further detail below.

*Four Remaining Claims*

Four claims remain, all levied against Smallbizpros: the Massachusetts Wage Act claim (Count I), the associated contract claims (Counts II-III), and the Severance claim (Count VIII). The Court agrees with Rafsky's contention that these claims only arose after he was terminated, rather than before and during the takeover, and are "personal." Because these claims differ somewhat in their factual basis, the Court analyzes them separately.

Rafsky, in relying on his termination by the Board as the triggering event for his deferred compensation, the subsequent non-payment of that compensation and severance as alleged violations of the Massachusetts Wage Act and his contract, is the author of his own demise. *See Kale*, 924 F.2d at 1164 ("all claims which are part of the same cause of action are extinguished, *whether or not asserted in the original action*") (emphasis added).

It does not matter that these claims or any others were not raised in the original action, as "[f]ederal claim preclusion law bars parties from relitigating claims that *could have been made* in an earlier suit, not just claims that were actually made." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Here, like in *Airframe*, "the plaintiff had every opportunity to fully litigate its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so." *Airframe,* 601 F.3d at 12. Because Rafsky and Defendants were parties to the Georgia Action, Rafsky could have asserted his "personal claims" in the original suit. *Id.* Rafsky chose not to for strategic reasons. *See* Transcript of Oral Arg. (Counsel for Rafsky stating "if [Rafsky] was able to get the other seven plaintiffs in the Georgia action to agree to allow him to bring his personal claims for damages… I would [then] agree that they could have been brought in Georgia.").

Because the Georgia court had diversity jurisdiction over the case, it allowed them to adjudicate the merits of claims arising under Massachusetts state law. 28 U.S.C. § 1332. Any strategic reasons notwithstanding, it is unlikely that the Middle District of Georgia would have declined the exercise of jurisdiction over Rafsky's Massachusetts Wage Act and other Massachusetts state law claims; federal courts sitting in diversity resolve disputes arising under the laws of other states frequently. *See, e.g., Klauber v. VMware, Inc.*, No. 22-1417, 2023 WL 5344921, at *6 (1st Cir. Aug. 11) (adjudicating merits of state law claims sitting in diversity); *Vasto v. Credico (USA) LLC*, 767 F. App'x 54, 57 (2d Cir. 2019) (same), *Porn v. Nat'l Grange Mut. Ins* (same). *See also Allstate Ins. Co. v. Occidental Int'l, Inc.*, 140 F.3d 1, 3 (1st Cir. 1998) (discussing *Erie*'s mandate for federal courts sitting in diversity to look to the substantive law of the forum state). And, as stated *supra* 7-8, any likelihood of bifurcation has little bearing on *res judicata*'s bar on claims that could have been raised in a prior suit.

Moreover, "… it is now enough to trigger claim preclusion that the plaintiff's second claim grows out of the same transaction *or set of related transactions* as the previously decided claim." *AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 31 (1st Cir. 2005) (emphasis added). The set of related transactions underlying Counts I-III and VIII begins with the takeover of the Board and Rafsky's subsequent termination as CEO, with both transactions leading to Smallbizpros' alleged non-payment of monies owed to Rafsky in alleged violation of his contract and the implied covenant of good faith and fair dealing. In fact, but for the takeover, Rafsky would not be, on his counsel's own admission, in this Court at all. Docket No. 36 ("had Rafsky prevailed in his [Georgia] action… this action would not have been necessary."). Without the two preceding events, the claims fall apart, revealing no cognizable cause of action.

Rafsky is therefore barred from raising Counts I-III and VIII for failure to assert them in the Georgia Action, and they are hereby dismissed with prejudice.

## Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Amended Complaint with prejudice (Docket No. 32) is ***granted*** as to all claims.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**

**SO ORDERED.**